UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT PORTER,

    Plaintiff

v.

NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION,

    Defendant.
_____/

Case No. 19-13651

Stephanie Dawkins Davis
United States District Judge

**ORDER GRANTING MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT (ECF No. 14)**

**I.     PROCEDURAL HISTORY**

Plaintiff, Vincent Porter, filed a complaint in state court against the National Football League Players Association (NFLPA), which was removed to federal court on December 11, 2019.  (ECF No. 1, 4).  Porter filed an amended complaint on March 10, 2020.  In the amended complaint, he alleges state law claims of tortious interference with a business expectancy, tortious interference with a business relationship, negligence, breach of fiduciary duty, and breach of contract. (ECF No. 13).  The NFLPA filed a motion to compel arbitration, or in the alternative, to dismiss the amended complaint.  (ECF No. 14).  This matter is fully briefed and ready for decision.  (ECF Nos. 17, 18).  The court determined, pursuant to Local Rule 7.1(f)(2), that a hearing was not necessary.  (*See* Text-Only Notice

1

dated 10/7/20). For the reasons set forth below, the court concludes that Porter's state law claims are preempted by federal law and accordingly, the complaint must be dismissed.

## II.    FACTUAL BACKGROUND

The NFLPA "is a labor organization representing professional American football players in the National Football League." (ECF No. 13, ¶ 2). As such, the NFLPA is "the exclusive collective bargaining representative of NFL players" under § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a). (ECF No. 13-2, Ex. 17). Porter has been a certified Contract Advisor licensed by the NFLPA since 2007. (ECF No. 13, ¶ 7). As a condition of representing NFL players, a Contract Advisor must agree to comply with, and be bound by, the Regulations. (ECF No. 13, Ex. 17, § 2.C). The NFLPA Regulations govern Contract Advisors' certification, conduct, discipline, and the method for resolving any related dispute. In his Application for Certification as an NFLPA Contract Advisor (the Application), Porter stipulated: "I agree to comply with and be bound by the [] Regulations. ... I agree that if I am denied Certification, or if subsequent to obtaining Certification it is revoked or suspended pursuant to the Regulations, the exclusive method for challenging any such action is through the arbitration procedure set forth in the Regulations." *Id*. Additionally, every prospective agent agrees to "be bound by" the Regulations, which contain an arbitration clause:

2

"This arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from ... (4) [a]ny other activities of a Contract Advisor within the scope of these Regulations." *Id*. § 5.A.

On October 1, 2014, Porter was charged by way of a sworn criminal complaint and affidavit with one count of conspiracy to commit wire fraud. (ECF No. 13, ¶ 9). The NFLPA learned of Porter's arrest through media coverage and initiated an investigation. (ECF No. 13-2, Ex. 5, Hrg. Tr. 17:8-21). On February 6, 2015, the NFLPA's Committee on Agent Regulation and Discipline (CARD) notified Porter that it was filing a disciplinary complaint against him and, pursuant to the "extraordinary circumstances" provision of § 6(B) of the Regulations, immediately suspended his certification. (ECF No. 13, ¶ 11; ECF No. 13-2, Ex. 1). In the letter, CARD advised Porter that his suspension would "continue through the resolution of any and all criminal complaints against [him]." (ECF No. 13-2, Ex. 1 at 2). Porter entered into a deferred prosecution agreement in which he acknowledged that he did not report his knowledge of the alleged illicit scheme to authorities. (ECF No. 13-2, Ex. 2 at 2).

CARD also advised Porter that he was entitled to "an expedited appeal of [his] suspension pursuant to section 6(E) of the Regulations," which requires "filing a written Notice of Appeal with the Arbitrator within twenty (20) days" following receipt of notice of a proposed disciplinary action. *Id*.; ECF No. 13-2,

3

Ex. 17, § 6.E). Porter initiated an arbitral appeal but missed his deadline by more than six months. (ECF No. 13, ¶ 13; ECF No. 13-2, Ex. 2). Nevertheless, an appeal hearing date was set. The issues before the arbitrator were whether Porter engaged in conduct prohibited by the Regulations as alleged by CARD, whether the discipline imposed should be affirmed or modified, and whether plaintiff's appeal was timely. *Id*. at ¶ 17. The Arbitrator, Roger P. Kaplan, found that CARD failed to sustain its burden to prove that Porter engaged in conduct prohibited by the Regulations and reversed and expunged his suspension. *Id*. at ¶ 18.

Following the arbitration, on April 7, 2016, the criminal charges against Porter were dismissed because he had fulfilled the terms of his deferred prosecution agreement. (ECF No. 13, ¶ 19; ECF No. 13-2, Ex. 6). On May 20, 2016, the arbitrator reversed and expunged Porter's suspension. (ECF No. 14, Ex. A, Arb. Award at 23-26). The arbitrator forgave Porter's missed deadline "based on the specific circumstances of this case." *Id*. at 26.

Despite the Arbitrator's conclusions, Porter contends that the NFLPA continued to punish, harass and interfere with Porter and his business interests. (ECF No. 13, ¶ 20). Notwithstanding the arbitrator's ruling and the charges being dismissed against Porter in federal court in California, the NFLPA continued to investigate him. *Id*. at ¶¶ 26-28. Porter describes the NFLPA's investigation regarding "the accuracy of your (Porter's) sworn statements during your

disciplinary appeal" as harassment. *Id*. at ¶ 32. He alleges that this harassment continued through the fall of 2018. *Id*. at ¶¶ 37-47. By way of example, Porter cites a September 17, 2018 email from the NFLPA addressing an issue that was already litigated in the arbitration. *Id*. at ¶ 41. And, on October 1, 2018, the NFLPA asked Porter to "release Defendant from any further assertions or claims related to the disposition of the disciplinary matter addressed in NFLPA Case 16-d-1." *Id*. at ¶ 45. In contrast to Porter's characterization of these communications, the NFLPA says it merely informed Porter that it would request documents associated with the criminal investigation, and Porter agreed that he would help secure them. (ECF No. 13-2, Ex. 5, Hrg. Tr. 23:13-18; ECF No. 13-2, Ex. 11). The NFLPA informed Porter that the "subject matter of this investigation" was "the accuracy of [his] sworn statements" during the disciplinary appeal and reminded Porter that he was required to cooperate fully with any NFLPA investigation pursuant to Section 3(A)(13) of the Regulations. (ECF No. 13-2, Ex. 13). While Porter alleges that this second investigation was intended to "harass" him and "interfere" with his business, he also acknowledges that "the investigation never resulted in any action against" him. *Id*. ¶ 32.

Pursuant to the Regulations, "[t]he Certification of any Contract Advisor who has failed to negotiate and sign a player to an NFL Player Contract ... for at least one NFL player during any three-year period shall automatically expire at the

5

end of such three-year period." (ECF No. 13-2, Ex. 17, § 2.G.; ECF No. 13, ¶ 59). According to Porter, the criminal charges against him "cost me all of my NFL Players that I represented" (ECF No. 13-2, Ex. 2 at 2), and, as a consequence, Porter's Contract Advisor certification was set to automatically expire because he had not negotiated any player-client's NFL contract over a three-year period. On August 24, 2018, Porter received a communication from the NFLPA indicating that Porter's certification would expire on September 30, 2018. (ECF No. 13-2, Ex. 16 at 1). Porter objected to the expiration of his certification in light of what he called "the extenuating circumstances" described above. *Id*. at 2. Porter then describes the subsequent communications from NFLPA as "harassment." *Id*. at 3-30; ECF No. 13, ¶¶ 37-64). The NFLPA ultimately granted Porter a one-year extension and Porter was able to "help negotiate two (2) NFL player contracts in 2019" and remain certified. *Id*. ¶ 52; ECF No. 13-2, Ex. 16 at 2, 28-29.

## III.   DISCUSSION

### A.   Standard of Review

In determining a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] . . . [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a

6

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

B. <u>Preemption</u>

While the NFLPA brings its motion under several theories, including a motion to remand for arbitration, the court concludes that the matter can be

7

disposed of entirely based on the doctrine of federal preemption. The parties, of course, disagree about whether Porter's claims are preempted by federal labor laws. According to the NFLPA, Porter seeks to challenge its enforcement of its agent disciplinary regime under state law and this amounts to a direct challenge to the union's right to act as the bargaining agent for NFL players. The NFLPA maintains that such a challenge is governed solely by federal law and therefore, Porter's state law claims are preempted. Porter maintains that there is no need for substantial analysis of the Regulations to consider his claims. He also says that none of the cases cited by the NFLPA involve a scenario where a plaintiff successfully obtained an arbitration award on the underlying conduct, then sought relief in court, and were ordered to arbitration. He maintains that his situation is distinguishable because he has successfully arbitrated the issues involving his suspension under the Regulations.

The NFLPA offers two bases for the court to find that Porter's claims are preempted. First, it suggests that his claims are preempted by § 9 of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (NLRA). Contract Advisors "are permitted to negotiate player contracts ... only because the NFLPA has delegated a portion of its exclusive representational authority" under § 9(a) of the NLRA to them. *White v. Nat'l Football League*, 92 F.Supp.2d 918, 924 (D. Minn. 2000); *see also* ECF No. 13-2, Ex. 17, Introduction ("[P]ursuant to federal labor law, the

NFLPA will regulate the conduct of agents. ... Clubs are prohibited from engaging in individual contract negotiations with any agent who is not ... duly certified by the NFLPA."). Accordingly, state law claims challenging a union's exercise of its authority to regulate agents are preempted. *Condon v. Local2944, United Steelworkers of Am.*, 683 F.2d 590, 594-95 (1st Cir. 1982) ("A union's rights and duties as the exclusive bargaining agent in carrying out its representational functions is precisely such an area [where state law should be preempted.]"); *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1165 (5th Cir. 1989) ("The Union's right to act as plaintiffs' bargaining agent is conferred by the NLRA, and we hold that the duties corresponding to this right conferred by federal labor law are likewise defined solely by federal labor law."). When a state law claim concerns "conduct that is actually or arguably either prohibited or protected by the [NLRA]," it is preempted. *Dickey v. Nat'l Football League*, 2018 WL 4623061, *9 (D. Mass. Sept. 26, 2018), aff'd, (1st Cir. Feb. 13, 2020) (quoting *Belknap*, *Inc. v. Hale*, 463 U.S. 491, 498 (1983)).

According to the NFLPA, Porter's state law claims challenge the NFLPA's enforcement of its agent and disciplinary scheme and thus, they are preempted by § 9. The court agrees. Throughout the complaint, it is evident that Porter's claims challenge how the NFLPA administered its agent disciplinary regulations. For example, he asserts that the NFLPA "had a duty to not suspend the Plaintiff's

9

license without cause and/or without following its own rules and/or regulations." (ECF No. 13, ¶ 86). He also claims that the "NFLPA breached [its Regulations] when it unjustifiably revoked his license to be a Contract Advisor." *Id*. ¶ 97. He also alleges that it was harassment when the NFLPA sent Porter an email "stating that his status as an NFLPA Licensed Contract Advisor would expire on September 30, 2018 due to Porter's failure to sign an NFL player" within a three-year period. *Id*. ¶ 37; *see also id*. ¶¶ 75, 82. The court's analysis in *Dickey* is apt. There, the plaintiff challenged the apparent disparity in the treatment of new and minority agents with how established agents were treated, especially with respect to the three-year rule, which he claimed was unfairly applied to him. *Id*. at 2. The court concluded that the plaintiff's state law claims, to the extent not governed by the CBA, were targeted at the "NFLPA's representational structure" and were therefore preempted by § 9 of the NLRA. In reaching this conclusion, the court focused on the mandate of the NFLPA and the certified advisor's relationship to the NFLPA:

> … the NFLPA is the exclusive representative of all NFL players. Certified agents' authority to represent NFL players in negotiating with NFL clubs exists solely by virtue of the NFLPA's discretionary decision to delegate some of its § 9(a) authority to those agents. Section 9(a) thus preempts Dickey's challenges to the methods by which the NFLPA delegates this authority, which are governed by the NLRA's system of exclusive representation.

10

*Id*. at *9. Similarly, Porter alleges that the three-year rule was inappropriately applied to him, that the NFLPA wrongfully suspended him, and that the NFLPA failed to follow its own regulations governing Contract Advisors. The factual underpinnings of Porter's state law claims, like those in *Dickey*, are based on the representational structure of the NFLPA – more specifically – how the NFLPA administers the Contract Advisor Regulations, and thus, are preempted by § 9.

Second, the NFLPA contends that Porter's claims are also preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq*. (LMRA). As the Supreme Court has held, "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Caterpiller, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quotations omitted). Section 301 also preempts state law claims to the extent they "necessitate[ ] analysis of, or substantially depend[ ] on the meaning of, a collective bargaining agreement." *Quesnel v. Prudential Ins. Co*., 66 F.3d 8, 10 (1st Cir. 1995); *see also Black v. NFLPA*, 87 F.Supp.2d 1 (D.D.C. 2000) ("State law based claims that depend on construction and application of terms in a collective bargaining agreement are preempted."). As explained in *Black*, the NFLPA is a labor union and the NFLPA Contract Advisor Regulations were formulated in accordance with the collective bargaining agreement. *Id*. at 4. More specifically, while contract advisors are not a party to the CBA, they agree to be

11

bound by the regulations promulgated under the CBA and their license to act as agents for NFL players "comes by delegation from the NFLPA, which is a party to the collective bargaining agreement." *Id*. at 4; *see also White v. Nat'l Football League*, 92 F.Supp.2d 918, 924 (D. Minn. 2000) ("Player agents are permitted to negotiate player contracts in the NFL only because the NFLPA has delegated a portion of its exclusive representational authority to them.").

The present circumstances are nearly indistinguishable from those analyzed in *Black v. NFLPA*. There, the plaintiff alleged a tortious interference claim against the NFLPA based on alleged discriminatory treatment under the pretext of a disciplinary proceeding, resulting in the NFLPA deliberately interfering with the plaintiff's contractual relationships with NFL players. *Id*. The court observed that the plaintiff's complaint is "about the way in which the NFLPA has conducted and will conduct his disciplinary proceeding." Accordingly, the complaint turns on the proper application of the Contract Advisor Regulations to the plaintiff's alleged illegal activities as a contract advisor. Under such circumstances, the state law tortious interference claims "cannot be described as independent of the collective-bargaining agreement." *Id*. (quoting *United Steelworkers v. Rawson*, 495 U.S. 362, 370 (1990)). Porter attempts to avoid the import of *Black* by arguing that no arbitration had yet taken place in *Black* and here, his underlying claims have already been resolved. Yet, this distinction does not address the factual

12

underpinnings of the complaint – that Porter finds fault with how the NFPLA conducted his disciplinary hearing, that he claims they violated their own regulations, and that this resulted in damage to his contractual prospects. The court is persuaded by the analysis in *Black* and finds that Porter's claims are similarly preempted by § 301.

## IV. CONCLUSION AND RELIEF

For the reasons set forth above, the Court **GRANTS** defendant's motion to dismiss the complaint based on federal preemption.

**IT IS SO ORDERED**.

Date: March 30, 2021                              s/Stephanie Dawkins Davis
                                                  Stephanie Dawkins Davis
                                                  United States District Judge