UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT PORTER

Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION

Defendant.

_____/

Case No. 19-cv-13651

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS ALL CLAIMS, OR IN THE ALTERNATIVE TO DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM [ECF NO. 34]

## I.     Introduction

Vincent Porter ("Porter" or "Plaintiff") brings this lawsuit against the National Football League Players Association ("NFLPA" or "Defendant"). It was properly removed to this Court from Michigan state court. Porter's First Amended Complaint alleges five counts. [ECF No. 13]. All counts were previously dismissed on preemption grounds. [ECF No. 20]. Porter appealed that decision and the Sixth Circuit remanded three of the counts for determination in the first instance: negligence (count III), breach of fiduciary duty (count IV), and breach of contract (count V).

1

Before the Court is the Defendant's Motion to Compel Arbitration and Dismiss the First Amended Complaint or in the Alternative, to Dismiss the First Amended Complaint for Failure to State a Claim, filed on November 21, 2022. [ECF No. 34]. Plaintiff responded on December 12, 2022, and Defendant replied on December 27, 2022. The Court heard oral argument on February 16, 2023. The motion is fully briefed. Porter conceded at oral argument that the two tort claims for negligence and breach of fiduciary duty (counts III and IV) are barred by the statute of limitations. [ECF No. 40, PageID.978].

For the reasons stated below, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **DISMISSES** Count V **WITHOUT PREJUDICE**.

Because Counts III and IV are barred by the statute of limitations, those counts are **DISMISSED WITH PREJUDICE**.

## II.    Factual Background

The factual background is detailed in the Court's Order Granting Motion to Dismiss the First Amended Complaint. [ECF No. 20, PageID.786]. It is further detailed in the Sixth Circuit's Opinion and Judgment. [ECF No. 27]. The Court incorporates them by reference and will only discuss the facts most pertinent to the breach of contract claim.

Porter is an NFL contract advisor licensed by the NFLPA (an "agent"). Only agents certified by the NFLPA may represent players in negotiations with NFL

teams. To be certified, agents must agree to comply with the NFLPA's Regulations governing contract advisors (the "Regulations"). Specifically, the application required for certification states:

> In submitting this Application, I agree to comply with and be bound by the[] Regulations . . . . I agree that if I am denied Certification, or if subsequent to obtaining Certification it is revoked or suspended pursuant to the Regulations, the exclusive method for challenging any such action is through the arbitration procedure set forth in the Regulations.

[ECF No. 13-2, PageID.594]. The Regulations govern agents' conduct and sets out disciplinary and arbitration procedures.

§ 2(E) of the Regulations provides that the NFLPA may propose suspension of an agent for any grounds that would serve as ground for denial of certification in the first place or for conduct prohibited in § 3(B). Specifically, § 3(B)(14) provides that agents are prohibited from "engaging in unlawful conduct and/or conduct involving dishonesty, fraud, deceit, misrepresentation, or other activity which reflects adversely on his/her fitness as a Contract Advisor or jeopardizes his/her effective representation of NFL players." [ECF No. 11-2, PageID.284]. § 2(B) lists numerous grounds for denial of certification, including fraud and conduct that "significantly impacts adversely on his/her credibility, integrity, or competence to serve in a fiduciary duty on the behalf of players." [ECF No. 11-2, PageID.279].

3

In 2014, Porter was charged with conspiracy to commit wire fraud and the U.S. government pursued the case in a federal court in California. The indictment and sworn affidavit alleged that Porter conspired with at least two individuals to defraud investors—including professional athletes—into investing in business ventures at inflated prices. [ECF No. 14-3, PageID.683]. In February 2015, The NFLPA Committee on Agent Regulation and Discipline ("CARD") sent Porter notice of a disciplinary complaint against him and immediately suspended his contract-advisor certification, citing violations of § 3(B)(14), amongst others. [ECF No. 13-2, PageID.395]. The letter accused Porter of engaging in a conspiracy designed to defraud athlete client investors. [Id]. The suspension was set to continue "through the resolution of any and all criminal complaints against [him]." [ECF No. 34, PageID.841]. [ECF No. 13-2, Ex. 1 at 2].

Not long after the suspension, Porter entered into a June 2015 deferred prosecution agreement. Pursuant to this agreement, Porter waived indictment and proceeded by information on one count of misprision of a felony and acknowledged that he knew two individuals named Joseph Vaccaro and a Confidential Informant "were scheming to misrepresent parts of an investment from Confidential Informant's alleged clients"; that he "did not as soon as possible make Vaccaro's and Confidential Informant's scheme known"; and that he thereby "concealed the commission of a felony." [ECF No. 34-3, PageID.886].

4

Porter filed an appeal of his suspension in September 2015, denying that he had breached the Regulations and requesting reinstatement. The NFLPA denied his request for reinstatement after a disciplinary hearing and Porter requested to have the matter arbitrated. The dispute went to arbitration in March 2016. The criminal conspiracy charge against Porter was dismissed on April 7, 2016. Finally, the arbitrator rendered a favorable ruling for Porter on May 20, 2016, concluding that:

> [w]hile evidence of the possible violations of the NFLPA regulations was presented by the CARD, contrary evidence was presented which made it impossible for the CARD to sustain its burden of proof. The additional argument that Porter committed fraud and, thus, should be denied certification has also been reviewed and is denied. Therefore, the suspension must be reversed and expunged. [ECF No. 34-4, PageID.918-19].

In sum, the arbitrator found that CARD failed to prove that Porter engaged in conduct prohibited by the NFLPA Regulations, he sustained Porter's appeal, and reversed and expunged the suspension. [Id].

On August 24, 2018, Porter received a communication from the NFLPA indicating that his certification would expire on September 30, 2018. [ECF No. 13-2]. The Regulations provide that, under the "Three-year Rule": "[t]he Certification of any Contract Advisor who has failed to negotiate and sign a player to an NFL Player Contract ... for at least one NFL player during any three-year period shall automatically expire at the end of such three-year period." [ECF No. 13-2, Ex. 17, § 2.G.; ECF No. 13, ¶ 59]. According to Porter, the criminal charges "cost me all of

5

my NFL Players that I represented" [ECF No. 13-2, Ex. 2 at 2]. Porter contends that his contract advisor certification was only set to automatically expire because the suspension prevented him from representing clients and he had not negotiated any player-client's NFL contract in over three years.

Porter objected to the expiration of his certification in light of what he called "the extenuating circumstances" described above. [Id]. The NFLPA ultimately granted Porter a one-year extension and Porter was able to "help negotiate two (2) NFL player contracts in 2019" and remain certified. [Id. ¶ 52; ECF No. 13-2, Ex. 16 at 2, 28-29].

The crux of this dispute revolves around whether Porter sufficiently alleges that the NFLPA breached the Regulations by suspending Porter's certification without sufficient cause and whether the question of breach and the associated harm are subject to arbitration under the Regulations. The Court will discuss this below.

### III.   Whether The Parties Agreed to Arbitrate Porter's Claims

After oral argument, two of the NFLPA's arguments for dismissal remain: (1) Porter's breach of contract claim is subject to arbitration under the Regulations; and (2) pursuant to Fed. R. Civ. P. 12 (b)(6), Porter's allegations fail to state a claim. The Court will discuss the applicable law and analysis relevant to the NFLPA's arbitration argument. However, because the Court ultimately finds that the only

6

remaining claim is subject to arbitration, it will not discuss dismissal under Rule 12(b)(6).

### A.  Applicable Law

When asked by a party to compel arbitration under a contract, pursuant to the Federal Arbitration Act ("FAA"), a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); 9 U.S.C §1. It is the duty of the Court, not the arbitrator, to determine the scope of parties' agreement to arbitrate. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v. Dixie Consumer Prod., LLC*, 533 F. Supp. 2d 735 (W.D. Mich. 2008) (*citing AT & T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 648 (1986)).

"[T]here is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute." *Masco Corp. v. Zurich Am. Ins. Co*., 382 F.3d 624, 627 (6th Cir. 2004) (internal quotations omitted); *see also Stout,* 228 F.3d at 714.; *Samaan v. Gen. Dynamics Land Sys., Inc*., 2014 WL 4829536, at *3 (E.D. Mich. Sept. 29, 2014) (citing *Stout*).

However, the U.S. Supreme Court has warned against "forc[ing] unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an

arbitrator, would decide." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 944, 945 (1996). "While ambiguities in the language of the agreement should be resolved in favor of arbitration, [the Court will] not override the clear intent of the parties or reach a result inconsistent with the plain text of the contract simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc*., 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (internal citations omitted).

## A. Analysis

The NFLPA relies on § 5(A)(4) of the Regulations, which describes a specific arbitration procedure. It states in relevant part:

> This arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from the following: (4) Any other activities of a Contract Advisor within the scope of these Regulations. . ..

[ECF No. 11-2, PageID.289]. Amongst other things, § 1(A) of the Regulations include under the "Activities Covered" section within the scope of the Regulations "any other activity or conduct which directly bears upon the Contract Advisor's integrity, competence or ability to properly represent individual NFL players and the NFLPA in individual contract negotiations . . ."

Porter argues that his claims arise from the actions of the NFLPA in erroneously suspending him and causing his loss, not from his own activities. [ECF No. 35, PageID.931]. He propounds this argument by asserting that no reference to the Regulations is necessary to decide whether the suspension amounted to a breach

of contract because the arbitrator has already decided that the suspension was improper. [ECF No. 35, PageID.928]. Thus, the argument goes, the Court need not examine the Regulations to determine whether Porter's criminal charges gave the NFLPA sufficient cause under the Regulations to suspend his certification.

For clarification the Court finds that the arbitrator did not conclude that the suspension was "improper" since that issue was not before him. The parties stipulated to the following issues in arbitration:

(1) Did Vincent Porter engage in or is he engaging in prohibited conduct alleged by the Committee on Agent Regulation and Discipline?

(2) If so, with respect to Issue No. 1, should the discipline imposed be affirmed or modified?

[ECF No. 34-4, PageID.898]. The arbitrator ultimately reversed and expunged the suspension, finding that counter evidence made it impossible for the NFLPA to sustain its burden to prove Porter violated the Regulations. [ECF No. 34-4, PageID.918]. Further, the question of whether the NFLPA had cause to suspend Porter's license in the face of a felony criminal fraud conspiracy charge is separate from the issue of whether he committed to alleged acts that led to his suspension.

The NFLPA argues that Porter's suspension arose from his activities within the scope of the Regulations. It relies on a case with similar facts: *Weinberg v. Nat'l Football League Players Ass'n*. There, the same arbitration clause of the NFLPA Regulations was at issue. *Weinberg*, 2007 WL 9717506, at *1 (N.D. Tex. June 19,

2007), affirmed in relevant part and reversed on other grounds, 286 F. App'x 215 (5th Cir. 2008). Plaintiff was suspended due to violations that included engaging in conduct which "reflect[ed] poorly on his fitness as a Contract Advisor" and prematurely collecting fees from a client. *Id.* at 2006 WL 4082039 The suspension was upheld by the arbitrator. *Id*. Plaintiff brought claims against the NFLPA for disciplinary action stemming from his alleged violations of the Regulations. *Weinberg*, 2007 WL 9717506, at *1. The court ruled that the claims were subject to arbitration because they arose from his activities within the scope of the regulations. *Id*.

The same arbitration clause is at issue here; it governs "any and all" disputes "arising from" Porter's "activities within the scope of the Regulations." The disciplinary complaint sent to Porter by the NFLPA referenced a criminal complaint which alleged that he and two other people engaged in a conspiracy to "defraud athlete clients out of millions of dollars by fraudulently concealing the price of an investment." [ECF No. 13-2, PageID.395].

The complaint cites Porter for violations of several sections of the Regulations. [Id]. The arbitrator concluded that it could not be proven that Porter violated the Regulations. But Porter acknowledged that he concealed the conspiracy, which could, under a reasonable interpretation of the regulations, bear on his "integrity, competence or ability to properly represent individual NFL players and

the NFLPA in individual contract negotiations" as defined in the section of the Regulations entitled "Activities Covered." [Id]. The suspension may have been reversed, but it was related to Porter's activities covered by the Regulations. Thus, the suspension itself, the harm it caused, and the dispute over whether the NFLPA breached the Regulations by suspending Porter, arose from his activities within the scope of the Regulations.

Even if the Court was inclined to accept Porter's argument that § 5(A)(4) does not bind him to arbitration for his claims focusing on the NFLPA's actions in suspending him and the purported harm it caused, § 6(E) binds Porter to arbitrate challenges to his suspension.

In *Dickey v. NFLPA*, a district court in Massachusetts considered the arbitrability of an agent's challenge to the NFLPA's allegedly selective enforcement of the three-year-rule. *Dickey v. Nat'l Football League*, 2018 WL 4623061, at *3 (D. Mass. Sept. 26, 2018), aff'd, 2020 WL 6819135 (1st Cir. Feb. 13, 2020). Ruling that this issue was not subject to arbitration, the *Dickey* court found that the arbitration provision at § 5(A)(4) does not apply to disputes between Contract Advisors and the NFLPA. *Id*. It reasoned that the provision only describes grievance procedures and contemplates disputes between NFL players and Contract Advisors and between multiple contract advisors. *Id*. (citing § 5(A)(2)-(6) and 5(B). It distinguished § 5(A)(4) from § 6(E), observing that § 6(E) lays out arbitration

11

procedures that govern suspension and revocation of certification. *Id*. at *3 (observing that, "if after becoming certified, Dickey had challenged the revocation or suspension of his certification, that claim also would fall squarely within the arbitration agreement.").

Unlike *Dickey's* challenge to the three-year rule, Porter's challenge to the revocation or suspension of his certification and the harm associated with it, falls squarely within the arbitration agreement. § 6(E) sets forth the arbitration procedure for filing an appeal and invokes arbitration in challenging the revocation or suspension of a certification. It states, "[t]he Contract Advisor against whom a Complaint has been filed under this Section may appeal CARD's proposed disciplinary action to the outside Arbitrator by filing a written Notice of Appeal with the Arbitrator within twenty (20) days following Contract Advisor's receipt of notification of the proposed disciplinary action." [ECF No. 11-2, PageID.292].

In fact, numerous provisions of the Regulations designate arbitration as the exclusive method of challenging suspensions. The application required for certification explicitly states that ". . .if subsequent to obtaining Certification, it is revoked or suspended pursuant to the Regulations, the exclusive method for challenging any such action is through the arbitration procedure set forth in the Regulations." [ECF No. 13-2, PageID.594]. Again, in § 2(E), which governs suspensions, it states, "the Contract Advisor may challenge any such proposed

suspension, revocation, or other discipline by appealing such action pursuant to Section 6. The appeal to arbitration shall constitute the exclusive method of challenging any proposed suspension, revocation of Certification or other discipline." [ECF No. 11-2, PageID.280].

The propriety of disciplinary actions imposed by the NFLPA is covered by the Regulations and the appeal process for suspensions; arbitration is the exclusive method of challenging them. [ECF No. 11-2, PageID.276-77]. This applies with equal force to Porter's claims asserting breach of contract. Findings regarding whether the suspension was sanctioned under the Regulations will determine if a breach occurred. This is true regardless of the fact that CARD could not prove that Porter engaged in prohibited conduct. Clearly, the parties reserved for arbitration any challenges to the propriety of a suspension in relation to contract advisor activities.

The tougher question, however, is whether the parties intended to arbitrate issues regarding harm that emanates from unwarranted suspension. On the one hand, such issues were likely contemplated, and an arbitrator's potential reversal of a suspension was likely foreseeable by the parties, which suggests that it is covered by the arbitration clause. However, the agreement is silent on whether the parties intended—or reasonably expected—a Court to decide whether there is any compensable harm resulting from unwarranted suspensions.

As the Sixth Circuit ruled in *Fazio v. Lehman Bros* that a proper method of analysis in determining the scope of an arbitration clause is "to ask if an action could be maintained without reference to the contract or relationship at issue." *Fazio v. Lehman Bros*., 340 F.3d 386, 395 (6th Cir. 2003). "If it could, it is likely outside the scope of the arbitration agreement." *Id*.

Porter's contention that the Court's analysis of the breach of contract claim need not involve interpretation of the Regulations is incorrect. He alleges that the NFLPA: (1) had a contractual obligation to not suspend his license without cause and/or without following its own regulations; and (2) the Regulations constituted a contract between himself and the NFLPA and it breached that contract when it "unjustifiably revoked" his license. [ECF No. 13, PageID.389]. The arbitrator did not conclude that the NFLPA unjustifiably revoked Porter's license in the face of a felony criminal fraud conspiracy indictment. To determine whether Porter's suspension was unjustified and whether it resulted in harm, the Court would need to interpret the Regulations to determine if they imposed any specific obligations on the NFLPA in the exercise of its authority to govern and revoke Porter's licensure status. Further, to determine if a breach occurred, the Court must inquire into whether the Regulations permit suspension based on allegations that have not been proved.

It is ambiguous, but the agreement could be interpreted to reserve for arbitration any damages issues resulting from unwarranted suspension and the issues pertaining to the propriety of the suspension itself under the Regulations. Porter provides no "positive assurance" that the arbitration clause is "not susceptible" to such an interpretation, and he provides no authority to rebut the NFLPA's interpretation. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir.2004). Pursuant to U.S. Supreme Court's mandate, "as a matter of federal law" under the Federal Arbitration Act, the Court must resolve these "doubts concerning the scope of arbitrable issues in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) (*citing Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). The fact that Porter's alleged violations of the Regulations could not be proven does not change the nature of this preexisting agreement to arbitrate the propriety of suspensions and the harm resulting from an improper suspension.

Given the ambiguities concerning the scope of arbitration and the Court's obligation to interpret the Regulations, the Court construes Porter's breach of contract claim in favor of arbitration. *See United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585 (1960). Because this claim is arbitrable and thus subject to dimissal, the Court will not discuss whether dismissal is warranted under Fed. R. Civ. P. 12 (b)(6).

IV.     **Conclusion**

For these reasons, the Court **GRANTS** Defendant's motion to compel arbitration and **DISMISSES** Porter's breach of contract claim **WITHOUT PREJUDICE**. Porter's negligence and breach of fiduciary duty claims are barred by the statute of limitations and are thereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**


Dated:  April 17, 2023                              /s/Gershwin A. Drain
                                                    GERSHWIN A. DRAIN
                                                    United States District Judge



CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 17, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk
